IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted On Briefs November 18, 2009

## JOE HENRY MOORE v. STATE OF TENNESSEE

**Direct Appeal from the Tennessee Claims Commission**
**No. 20-101-047      Nancy C. Miller Herron, Commissioner**

_____

**No. W2008-02699-COA-R3-CV - Filed December 23, 2009**

_____

This case arises out of a prisoner's claims for medical malpractice, negligence, and violation of his right to be free from cruel and unusual punishment under the state and federal constitutions. The claims commission, in two separate orders, wholly resolved the prisoner's claims in favor of the State of Tennessee. Because the prisoner has not argued or otherwise provided any basis for this Court to determine the alleged errors in the judgment of the claims commission, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

DAVID R. FARMER, J. , delivered the opinion of the Court, in which HOLLY M. KIRBY, J.,and J. STEVEN STAFFORD, J.,  joined.

Joe Henry Moore, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, and Arthur Crownover, II, Senior Counsel, for the appellee, State of Tennessee.

**OPINION**

Joe Moore ("Moore"), a long-time inmate at the West Tennessee State Penitentiary ("WTSP"), initiated these proceedings when he filed claims for medical malpractice, negligence, and violation of his right to be free from cruel and unusual punishment under the

state and federal constitutions with the Tennessee Claims Commission ("Commission").[1] In his complaint and amended complaint, Moore explained that doctors diagnosed him with degenerative arthritis in his right hip in the late 1980's. He alleged that he sought treatment for his condition throughout the 1990's without success because a physician's assistant employed by the State refused to recommend surgery. Moore further alleged that WTSP's negligence in not providing him with proper medical treatment allowed his condition to deteriorate to the point his hip could not be effectively repaired. He claimed that, as a result of the alleged negligence, he would never be able to walk or stand for long periods of time, jeopardizing his ability to earn a living following his release and diminishing his quality of life.

Moore received surgery on his hip in December of 1999 but alleged that he was thereafter deprived of mandatory rehabilitative therapy that his physician had approved. Moore contended that his inability to complete a meaningful portion of the recommended rehabilitation prevented him from returning to the standard of living he was accustomed to before the surgery and caused him to lose full and total use of his body. Moore further alleged that the State deprived him of proper footwear and medication.

The State filed a motion for partial judgment on the pleadings with the Commission arguing that Moore's claims for negligence and medical malpractice were barred by the applicable statute of limitations. The State further argued that the Commission did not have jurisdiction to consider Moore's constitutional claims. The Commission granted the State's motion in part. The Commission agreed that the statute of limitations for negligence and medical malpractice barred claims arising out of the alleged improper diagnosis and improper pre-surgical treatment of Moore's condition. The Commission also found that it lacked jurisdiction over the prisoner's constitutional claims. The Commission, however, concluded that it was not clear that Moore's claims for medical malpractice based on post-surgical treatment did not arise within one year of the filing of his claim. The Commission later denied Moore's request for en banc review of its decision.

More than two years later, the State filed a motion to dismiss Moore's remaining medical malpractice claims. The motion explained that Moore admitted he did not have an expert to testify that state employees deviated from the acceptable standard of care. Moore submitted in defense of his claim that the alleged malpractice was within the common knowledge of a layman. The Commission agreed with the State's position that Moore could not establish an essential element of his claim–deviation from the applicable standard of care. The Commission further noted that Moore could not prevail even if his claims were in

_____

[1]It appears, although it is not certain, that Moore currently resides at Forgiveness House in Memphis, Tennessee.

negligence because he could not establish the essential elements of injury and causation absent expert testimony. The Commission concluded that Moore had ample opportunity to procure an expert to testify on his behalf, which he failed to do. As a result, the Commission dismissed his remaining claims. Moore timely filed a notice of appeal.[2]

On appeal, Moore has failed to offer any argument on why the Commission reached an erroneous decision on the State's motions. Moore's brief contains little more on the substance of his argument than a single conclusory allegation that agents of the State improperly diagnosed and treated his hip condition–this despite the fact that this Court has twice extended the deadline for the filing of Moore's brief. Under the circumstances, we consider Moore's arguments waived. *See* Tenn. R. App. P. 27(a)(7) (requiring argument supported by authority); Tenn. Ct. App. R. 6(a), (b) (requiring citation to determinative facts and alleged errors); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citations omitted) (explaining that appellate courts will not consider issues not raised or properly argued in the appellant's brief). We recognize that this Court has discretion to suspend the operation of the aforecited rules for good cause. Tenn. R. App. P. 2; Tenn. Ct. App. R. 1(a). We further recognize that Moore is a *pro se* claimant. We nevertheless find insufficient reason to formulate our own arguments on Moore's behalf.

Justice Koch, prior to his appointment to the Tennessee Supreme Court, highlighted the arguments for and against the relaxation of court rules in cases involving *pro se* litigants in *Discover Bank v. McCullough*, No. M2006-01272-COA-R3-CV, 2008 WL 245976, at *3-4 (Tenn. Ct. App. Jan. 29, 2008)(*no perm. app. filed*). He wrote:

> Self-represented litigants are entitled to fair and equal treatment by the courts. In Tennessee, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training. Thus, courts are expected to take into account that many self-represented litigants have no legal training and are unfamiliar with judicial procedures.

---

[2]The appellate court clerk's office did not receive Moore's notice of appeal until late 2008. It nevertheless appears that Moore has demonstrated pursuant to Tennessee Rule of Appellant Procedure 20(g) that he delivered his notice of appeal to the appropriate individual at his correctional facility within the time fixed for filing under Tennessee Rule of Appellate Procedure 4(a). The record contains a notice of appeal signed by Moore and dated March 26, 2006; the trial court entered final judgment on March 16, 2006. The certificate of service states that a copy of the notice was mailed via United States mail to the Commission and opposing counsel with notice being "placed in the hand[s] of prison officials on [the] same date." Although it is not entirely clear what happened to Moore's notice of appeal following its delivery to prison officials, we conclude that he has met his burden under Rule 20(g) in absence of any argument to the contrary from opposing counsel. Moore's appeal is appropriately before this Court.

Accordingly, Tennessee's courts should give self-represented litigants who have no legal training a certain amount of leeway in drafting their pleadings, motions, and other papers. They should measure the papers prepared by self-represented litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Courts, however, must also be mindful of the boundary between fairness to a self-represented litigant and unfairness to that litigant's adversary. Courts may not excuse self-represented litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. . . . Simply stated, "[a]lthough ... [self-represented] parties are afforded a liberal interpretation of their pleadings and briefs before our courts, this liberal construction cannot create rights where none exist."

The line between appropriate indulgence of a self-represented litigant's shortcomings and unfairness to the self-represented litigant's adversary, although fine, must be maintained. Accordingly, the courts should not permit self-represented litigants to shift the burden of litigating their case to the courts or to their adversaries. While courts should liberally construe a self-represented litigant's papers to give effect to their substance rather than their form, they should not manufacture or create a claim, defense, or argument that cannot reasonably be found in the document. Absent some basis from which a court can reasonably construe the pleading in such a manner, a liberal construction alone will not create a pleading, defense, or claim.

Courts must maintain their ethical equilibrium by managing the tension that exists between smoothing bumps in the litigation process for a self-represented litigant and their responsibility to remain impartial. Where a trial court strays beyond liberal construction into the realm of creating and manufacturing claims and defenses that simply do not exist in the self-represented litigant's pleadings, it has improperly abdicated its role as an impartial, neutral arbiter and instead has become an advocate for the self-represented litigant.

*Discover Bank*, 2008 WL 245976, at \*3-4 (footnote omitted) (citations omitted). These principles similarly guide the construction of papers filed in the appellate courts. *See In re Estate of Chandler*, No. E2000-03055-COA-R3-CV, 2001 WL 1448495, at \*2-4 (Tenn. Ct. App. Nov. 15, 2001). Finding reversible error in the present case would require this Court to go beyond its duty of liberal construction and into the realm of advocacy. We therefore affirm the decision of the Commission dismissing Moore's claims.

-4-

**Conclusion**

For the foregoing reasons, we affirm the judgment of the Tennessee Claims Commission. Costs of this appeal are taxed to the appellant, Joe Moore, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE